# Ortiz & Ortiz, L.L.P.
Attorneys at Law
32-72 Steinway Street, Suite 402
Astoria, New York 11103

Frank A. Ortiz
Norma E. Ortiz\*
_____

Martha J. de Jesus\*
 \* (Admitted in New York and New Jersey)

Tel. (718) 522-1117
Fax (718) 596-1302
email@ortizandortiz.com

April 16, 2015

Dwight Joyce, Esq.
Jennifer Stead, Esq.
Law Office of Dwight Joyce
2 Joyce Plaza
Stony Point, New York  11209

Ms. America Sanchez
1131 Elder Avenue
Bronx, New York

        Re: America Sanchez, 10-12490
           Motion to Vacate Order Returnable
           May 7th

           **Notice of Intent to File Motion for**
           **Sanctions ("Safe Harbor Letter")**

Ladies and Gentlemen:

  This letter serves as notice to you of my firm's intent to seek sanctions against you as a result of, among other things, the pejorative and perjurious statements made by Mrs. Sanchez and Ms. Stead and your failure to conduct a reasonable inquiry of the facts before filing your Motion to Vacate the Stipulation on March 19, 2015.

  I have attached a draft Notice of Motion and a draft Declaration that clearly set forth the grounds for the relief we seek under Bankruptcy Rule 9011 and Judiciary Law 287.  We may amend the motion to include a request for sanctions under 28 U.S.C. 1927.  As such, this letter and accompanying documents satisfy the notice requirements established by the Second Circuit in <u>Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.</u>, 682 F.3d 170 (2d Cir. 2012).

  Please note that my firm has expended in excess of 25 hours preparing the motion, our

April 16, 2015
Page 2

motion to withdraw, and a motion to seal your Vacate Motion. My currently hourly rate is $450 an hour.

    Please respond at your earliest convenience.

                                        Very truly yours,

                                        S/

                                        Norma E. Ortiz

Encls.

ORTIZ & ORTIZ, L.L.P.  Hearing Date: TBD
32-72 Steinway Street, Suite 402  Hearing Time: TBD
Astoria, New York 11103
Tel. (718) 522-1117
Fax (718) 596-1302
Email: email@ortizandortiz.com
Norma E. Ortiz, Esq.
*Pro Se*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re

AMERICA SANCHEZ,

                    Debtor.
---------------------------------------------------------x

Case No. 10-12490-jlg

Confirmed Chapter 13

**NOTICE OF HEARING ON MOTION FOR AN ORDER IMPOSING SANCTIONS
UPON AMERICA SANCHEZ, JENNIFER STEAD, ESQ., AND THE LAW OFFICE OF
DWIGHT D. JOYCE PURSUANT TO 11 U.S.C. § 105(A), FED. R. BANKR. PROC. 9011,
LOCAL RULE 9011-1, 28 U.S.C. 1927,  AND N.Y. JUDICIARY LAW 287 (1)**

    PLEASE TAKE NOTICE, that upon the annexed motion (the "Motion"), of Ortiz & Ortiz, L.L.P., (the "Movant"), the undersigned will move before the James L. Garrity, United States Bankruptcy Judge, in the United States Bankruptcy Court of the Southern District of New York, One Bowling Green, New York, New York 10004, on the _____ day of May, 2015 (the "Hearing Date"), at 2:00 p.m., or as soon thereafter as counsel may be heard, for the entry of an Order Imposing Sanctions Upon America Sanchez, Jennifer Stead, Esq., and the Law Office of Dwight D. Joyce Pursuant to 11 U.S.C. § 105(a), Fed. R. Bankr. Proc. 9011, Local Rule 9011-1, 28 U.S.C. 1927,  and N.Y. Judiciary Law 287 (1) awarding fees to the Applicant.  The Movant may request such other and further relief as is just and equitable at the hearing.

    PLEASE TAKE FURTHER NOTICE, that any response to the Motion must (a) be in writing and (b) must be filed with the Clerk of the Bankruptcy Court electronically at

www.nysb.uscourts.gov.  If you do not have the ability to file an objection electronically, the objection may be filed with the Clerk of the Court by presenting the Clerk with a copy of the objection saved on a diskette or compact disk in .pdf format by the date stated above.  A copy of the objection must be provided to (a) the Chambers of the Honorable James L. Garrity, and (b) Ortiz & Ortiz, LLP, 32-72 Steinway Street, Astoria, New York 11103, so as to be received no later than seven (7) days before the hearing.  The objection must comply with the Bankruptcy Rules and the Local Bankruptcy Rules of the court and must state with particularity the legal and factual bases for such objection.

Dated:  April 16, 2015
       Queens, New York

                                                                         /s/Norma E. Ortiz
                                                                    Norma E. Ortiz, Esq.
                                                                    ORTIZ & ORTIZ, L.L.P.
                                                                    32-72 Steinway Street, Suite 402
                                                                    Astoria, New York 11103
                                                                    Tel. (718) 522-1117
                                                                    *Pro Se*

Norma E. Ortiz  DRAFT
Ortiz & Ortiz, L.L.P.
32-72 Steinway Street, Ste. 402
Astoria, New York  11103
Tel. (718) 522-1117
Fax (718) 596-1302
*Pro Se*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re

AMERICA SANCHEZ,

                        Debtor.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case No. 10-12490-sll

Confirmed Chapter 13

**<u>DECLARATION OF NORMA E. ORTIZ IN SUPPORT OF MOTION FOR SANCTIONS</u>**

      Norma E. Ortiz, a partner of Ortiz & Ortiz, L.L.P. ("Counsel"), counsel to America Sanchez (the "Debtor"), hereby states as follows in support of Counsel's Motion for an Order Imposing Sanctions Upon America Sanchez, Jennifer Stead, Esq., and the Law Office of Dwight D. Joyce Pursuant to 11 U.S.C. § 105(a), Fed. R. Bankr. Proc. 9011, Local Rule 9011-1, 28 U.S.C. 1927,  and N.Y. Judiciary Law 287 (1) (the "Sanctions Motion"):

      1.     At the time of this writing, Counsel is bound by the confines of the attorney-client privilege, and limits the facts stated herein primarily to facts set forth in the documents filed with the Court, and that are part of the public record.  Once counsel obtains an order permitting its withdrawal as Debtor's counsel, it reserves the right to amend the instant Declaration.

<u>Background</u>

      2.     The Debtor purchased her home in 2006 (the "Home").  It is a three-family house located at 1131 Elder Avenue in Bronx County, New York.  The Debtor resided in the Home

1

with her family, and rented the remaining apartments to tenants, prior and subsequent to the filing of her Chapter 13 case.

3. In order to purchase the Home, the Debtor obtained a first mortgage note, in the amount of $473,600, from First Meridian Mortgage LLC in March 2006 (the "Note"). According to the state court foreclosure complaint filed by the loan servicer that serviced the Note (the "Servicer"), the Debtor stopped making payments on the Note in June 2008. The foreclosure action was commenced against the Debtor in 2009.

4. The Debtor retained Counsel to file a Chapter 13 petition on March 7, 2010. The Debtor sought to utilize her Chapter 13 to reorganize her financial affairs and attempt to save her Home. However, at the time of her bankruptcy filing, the Debtor owed approximately $105,000 in mortgage-related arrears. As set forth in the Debtor's Schedules I and J, the Debtor's monthly disposal income when she filed her case was approximately $350, and she did not earn enough income to cure her mortgage arrears through her plan. Therefore, the Debtor's ability to save her Home was wholly dependent upon either a modification of the Note and mortgage, a substantial post-petition increase in household income, or some other significant financial accommodation offered by the Servicer.

5. The Debtor engaged in loss mitigation before the Court from in or about September 2010 through February 2012. The Debtor made multiple submissions of documents during that period, and the Court scheduled no less than ten loss mitigation conferences during that time. However, the Servicer denied the Debtor's application because of – it asserted – her inadequate income.

6. In the fall of 2011, Counsel learned that the law firm representing the Servicer,

Steven J. Baum, P.C., had engaged in questionable practices in connection with their prosecution of foreclosure actions. Counsel learned that the Baum firm represented the Servicer in connection with the Debtor's foreclosure action. Counsel reviewed the documents underlying the foreclosure action and the documents filed in support of the Servicer's proof of claim and found discrepancies among the documents that led it to question the veracity of the representations set forth in the Servicer's proof of claim.

7. Counsel sought a Rule 2004 examination of the Servicer and engaged in informal discovery for months. As the proceeding progressed, and required many hours of Counsel's time, Counsel entered into a new litigation agreement with the Debtor that provided that it would recover its legal fees from third parties (presumably the Servicer) and the monies paid by the Debtor to the Chapter 13 Trustee in May 2013. The agreement confirmed Counsel's oral representations to the Debtor that in order to help the Debtor keep her Home in a manner that was affordable to the Debtor, Counsel would not seek fees personally from the Debtor. The terms of the agreement were translated to the Debtor in Spanish.

8. The Debtor filed an objection to the Servicer's Proof of Claim that was eventually scheduled for trial in December 2013. The Debtor retained a forensic expert and co-counsel to help prosecute the claim objection.

9. Co-counsel, the law firm of Garvey, Tirelli, & Cushner, Ltd., did not receive any compensation directly from the Debtor for prosecuting the claim objection. Co-Counsel also agreed to limit any legal fee recovery for prosecuting the claim objection to funds recovered from the Servicer or from any funds paid into the Debtor's plan so that the Debtor could afford to prosecute her objection. The undersigned was present when the Debtor retained Co-counsel,

3

and translated the terms of the retainer agreement to the Debtor and her husband in Spanish before the Debtor signed the retainer agreement.

10. Although not reflected in documents filed with the court, the Servicer and Counsel discussed the possibility of permitting the Debtor to re-submit another application for a loan modification on or before the trial date. For reasons Counsel may not disclose because they are protected by the attorney-client privilege, the Debtor declined the offer to apply for another loan modification.

11. The Debtor agreed to the proposed settlement agreement (the "Settlement Agreement" ) of the claim objection on the trial date on December 10, 2013. The Debtor agreed to vacate the Home, so long as her son could complete the school year before the family was required to relocate. As a result, the Settlement Agreement permitted the Debtor to remain in the Home through June 30, 2014, without payment to the Servicer, so long as she remitted the net rental proceeds to the Servicer on a monthly basis.

12. Based upon communications from the Debtor and counsel to the Servicer, Counsel was led to believe that the Debtor fully complied with the terms of the Settlement Agreement. For example, the Settlement Agreement required the Debtor to provide the Servicer with proof of monthly expenses and the rental income she collected. Some of the documents evidencing these transactions were sent by the Debtor to Counsel and Counsel forwarded the documents to the Servicer's counsel. Therefore, during the spring of 2014, Counsel reviewed documentation that demonstrated that the Debtor was performing under the terms of the Settlement Agreement.

13. When the Settlement Agreement was entered into by the Debtor, the Servicer

asserted that the Debtor had accrued approximately $139,650 in post-petition mortgage arrears, including escrow and interest payments. By entering into the settlement, the Debtor (a) retained the rents she had collected for the 44 months her case had been pending, (b) retained the funds she had set aside in lieu of making mortgage payments during the three year period her case had been pending, (c) lived without paying any housing costs for an additional six month period from January through June 2014, and (d) should have discharged any unpaid pre-petition debt.[1]

14.    Counsel was led by the Debtor to believe that the Debtor complied with the terms of the Settlement Agreement. The Debtor communicated with Counsel throughout the six month period following entry of the settlement. For reasons Counsel may not disclose because they are privileged, Counsel asserts it explained the terms of the Settlement Agreement to the Debtor in Spanish, both before and after the Debtor accepted its terms, and the Debtor fully comprehended that she was relinquishing ownership of her Home. The Debtor also fully understood that the legal fees incurred by Counsel and Co-counsel would be satisfied from the fees paid by the Servicer and the plan payments held by the Chapter 13 Trustee.

a.    <u>Communication with the Debtor in Spanish</u>

15.    Not a single individual employed by Counsel spoke to the Debtor or her husband regarding any matter of substance in any language other than Spanish. Counsel's two partners speak Spanish. Martha de Jesus and Juan Parodi, the employees responsible for the Debtor's case other than the undersigned – are children of immigrants from Spanish-speaking countries. Martha de Jesus, who is a recent law school graduate, was born in the same Spanish-speaking

---

[1] The Debtor has not filed a certificate evidencing she had taken a financial management course, and has not yet obtained an order of discharge.

country as the Debtor: the Dominican Republic. Martha has been employed by Counsel for almost ten years. Juan is of Argentine descent, and Spanish is his first language. Juan has been employed by Counsel for over eight years. Both employees spent countless hours assisting the Debtor in Spanish. A Declaration of Juan Parodi and Martha de Jesus, attesting to the fact they communicated to the Debtor extensively in Spanish over the three year period her case was pending before the court, is annexed hereto. In fact, Martha's Declaration sets forth that the Debtor was fully apprised in Spanish, both before and after the trial, of her option to seek another loan modification, the terms of the settlement, and the amount and source of payment of Counsel and Co-Counsel's legal fees.

16. In fact, as set forth in the annexed Declarations, Martha attended the trial for the sole purpose of translating the proceedings to the Debtor. Martha translated every single provision of the settlement agreement to the Debtor when it was read on the record on the trial date. The Court was informed of that fact. Prior to entering into the settlement with the Servicer, everyone of the settlement terms that were proposed by the Servicer and negotiated by Counsel and Co-counsel were explained to the Debtor and stated in Spanish by both the undersigned and Martha.

b.    Confirmation of Debtor's Plan and Subsequent Communications

17. On June 4, 2014, the Debtor filed an amended plan of reorganization that provided for no further payments to creditors. An order confirming that plan was entered by the court on September 5, 2014.

18. The Debtor communicated with Counsel until the summer of 2014. She informed Counsel that she had complied with the terms of the settlement agreement, and made a number

of inquiries to Counsel regarding how to turn over the keys to the Home, and what to do with rent that had been forwarded to her by her tenants after June 30th.

19. However, Counsel was unable to communicate with the Debtor sometime after late summer and early fall 2014. The trustee issued a notice of the Debtor's failure to comply with the requirement of taking the financial management class prior to obtaining a discharge. The Debtor did not respond to any of Counsel's communication. Apparently, the undersigned wrongfully concluded that the lack of communication was due to the Debtor's relocation. According to the Vacate Motion, the Debtor has failed to comply with the terms of the Settlement Agreement and continues to occupy the Home.

c.  Counsel's Request That The Law Office of Dwight Joyce Conduct Due Diligence Before Making a Motion to Set Aside Settlement Agreement and Confirmation Order

20. By email dated November 7, 2014, the undersigned received a copy of a letter signed by Jennifer Stead, Esq. The letter was written on the letterhead of the Law Offices of Dwight D. Joyce. The email was signed by Ms. Stead. A copy of the email and letter are annexed hereto.

21. The November 7th letter stated that Ms. Stead had been retained to make a motion to set aside the settlement agreement and modify the plan. The letter directed my firm to place any funds received in escrow so that the funds could be returned to the Trustee or the Servicer.

22. That same day, Counsel responded by email to Ms. Stead and Mr. Joyce, and asked how it could assist the firm in serving as substitute counsel. The email asked for the Debtor's new mailing address, because Counsel had been unable to communicate with the Debtor to confirm she sought to substitute attorneys. A copy of the email is annexed.

23. Ms. Stead replied to Counsel's email by an email that stated Mr. Joyce would be

contacting Counsel to transfer the file. A copy of that email is annexed.

24. The undersigned attempted unsuccessfully to communicate with Mr. Joyce by telephone. By email dated November 11, 2014, the undersigned emailed Mr. Joyce and Ms. Stead (collectively, the "Firm") and informed them of the failed attempt to communicate by telephone. A copy of the email is annexed.

25. On November 14, 2014, the undersigned emailed a letter addressed to Mr. Joyce. A copy of that letter is annexed. The letter:

> – informs Mr. Joyce that Counsel is not holding any funds in escrow and is not required to do so;
>
> – requests that Mr. Joyce file a Notice of Appearance before proceeding further and requiring further action from Counsel;
>
> – informs Mr. Joyce that the Debtor knowingly and voluntarily entered into the agreement and the amended confirmed plan;
>
> – informs Mr. Joyce that Counsel's entire staff is bilingual, and communicated to the Debtor in Spanish at all times, including on the date the Debtor agreed to the terms of the settlement agreement;

26. Most significantly, the November 14th letter specifically requested that Mr. Joyce ensure that he was fully informed before making the Vacate Motion. The letter stated:

> Finally, please note that Ms. Sanchez's case was a very difficult case for my firm. We funded her efforts for years. My associate and paralegal were personally involved in assisting me, and spent many unbilled and uncompensated hours helping her. We were all particularly taken aback by your letter. **Therefore, please ensure that you are fully informed before proceeding.**

27. Counsel received no further communication from the Firm, and did not receive a response to the November 14th letter. The Firm did not file a Notice of Appearance in the case until March 19, 2015.

8

28. Counsel never received a proposed stipulation permitting Mr. Joyce or Ms. Stead to serve as substitute counsel to the Debtor or any further request to turn over the Debtor's file to the Firm.

D. <u>The Motion to Vacate the Settlement Agreement</u>

29. On March 19, 2015, the Debtor filed a motion entitled Debtor's Motion to (1) Set Aside The Stipulation of Settlement Dated April 30, 2014; (2) Reopen the Chapter 13 Plan (3) Issue an Order Dismissing the Chapter 13 Case; and (4) Granting Such Other and Further Relief as the Court Deems Proper and Just (the "Vacate Motion").

30. Prior to filing the Motion, the Firm made no attempt to discuss the facts alleged in the Motion with Counsel or review any documents in the Debtor's file to ensure that her allegations were truthful.

e. <u>The Motion is Devoid of a Single Citation of Law in Support of the Requested Relief</u>

31. The Vacate Motion is comprised of the following documents: A Notice of Hearing, an Affirmation of Jennifer Stead, a Declaration of the Debtor, and a Certificate of Service. There is not a single citation of law cited in support of any of the relief requested. No proposed order is attached to the motion.

32. The only statement that refers to the legal relief sought by the Debtor is contained in Paragraph 9 of Ms. Stead's Affirmation. That paragraph states that "Our intention in bringing this Motion is to vacate the stipulation and then to amend the Debtor's Chapter 13 plan to allow the Debtor to pursue a modification of her mortgage, the end result of which shall be that the Debtor is able to keep her home." However, this statement does not set forth the legal or factual bases to support the relief requested by the Debtor. Moreover, Paragraph 9 of the Vacate Motion

9

conflicts with the Notice of Motion, when states that the Debtor seeks to re-open and dismiss her case.

f. <u>The Facts Asserted in the Motion by Jennifer Stead and the Debtor</u>

33. The factual allegations pertinent to the instant motion that are set forth in Ms. Stead's Declaration can be summarized as follows:

> It was never the Debtor's intention to give up her house. If it was, all she would have had to do was nothing. Para. 3.
>
> The Debtor hired a bilingual lawyer to obtain a loan modification. Paras. 4 and 5.
>
> Much to the Debtor's surprise, the Debtor gave up her house in exchange for Counsel's receipt of $40,000. If the end result was explained to her, she would not have agreed to the stipulation. Para. 6. She would not have given up her house in exchange for payment to her lawyer. Para. 7.
>
> There is no logical explanation for someone to give up their house in exchange for their attorney receiving $40,000 except that the Debtor was never informed of the end result of the settlement of the stipulation. The end result is unconscionable and warrants vacating the stipulation. Para. 7.
>
> Counsel has been unjustly enriched by failing to explain the stipulation to the Debtor. The Debtor Para. 8.

34. The factual allegations pertinent to the instant motion that are set forth in the Debtor's Declaration can be summarized as follows:

> The Debtor still resides in the Home. Para. 3.
>
> The sole objective of retaining Counsel was to obtain a loan modification. Para. 7. The Debtor sought loss mitigation in her case but was denied. Para. 9
>
> "Prior to my execution and the Court's so ordering of the stipulation, Ms. Ortiz explained the contents of the Stipulation and Order of Settlement." Para. 11.
>
> "Ms. Ortiz never told me and I did not agree to give up my house in exchange for my attorney receiving an additional sum of money approaching $40,000, which includes a $20,000 payment from Wells Fargo and all of the money I paid to the Trustee since the case commenced." Para. 11.

10

> The Debtor alleges that she asked the undersigned to translate the judges' comments in real time on the trial date, but that I declined to do so. Para. 14.
>
> "Ms. Ortiz never explained that I was surrendering my home so she could collect the money.

Counsel asserts that the Debtor's declaration allege false statements of fact.

g.     Status of the Bankruptcy Case

35.    The Debtor's plan was confirmed by Court order entered on September 5, 2014. All payments have been made under the plan. The 180 day period following entry of the confirmation order expired on or about March 5, 2015. Upon information and belief, the Debtor's case has not been closed because she has not taken a financial management course.

Argument

**COUNSEL IS ENTITLED TO AN AWARD OF SANCTIONS
PURSUANT TO 11 U.S.C. § 105, FED. R. BANKR. PROC. 9011,
LOCAL RULE 9011-1, 28 U.S.C. 1927, and
N.Y. JUDICIARY LAW 287 (1)**

36.    Counsel asserts that the Debtor intentionally filed a declaration that contains false statements of material fact. Counsel asserts further that Ms. Stead filed an affirmation and motion that fails to meet the most rudimentary requirements of a motion filed in the Southern District of New York and contains materially false statements of fact. Morever, since Counsel specifically implored the Firm to review the facts underlying its contentions before filing the Vacate Motion, the Firm's failure to conduct a reasonable inquiry of the facts before filing the motion evidences a clear violation of an attorney's obligation to conduct a reasonable inquiry before certifying the veracity of the facts, and the merits of any legal arguments propounded, before submitting a sworn document before a court of law. The fact that the Firm and Ms. Stead

11

ignored Counsel's representations of fact, and Counsel's request that the Firm fully review the facts before filing the Vacate Motion, demonstrates that the Firm failed to conduct a reasonable inquiry before bringing the Motion.

37. Such conduct is in direct violation of Fed. R. Bankr. Proc. 9011 and Local Rule 9011-1. Rule 9011 provides in relevant part:

> (b) *Representations to the Court*. By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, **formed after an inquiry reasonable under the circumstances**,
>
> > (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> >
> > (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
> >
> > (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> >
> > (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.
>
> (c) *Sanctions*. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

38. Rule 11 requires an attorney to make a pre-filing investigation before filing a motion with the court. If an attorney fails to make an objectively reasonable inquiry before filing a motion, sanctions may be appropriate. As stated by the Second Circuit, "While reliance on the client for the facts may be professionally justified in some circumstances, the ultimate

responsibility for the decision to invoke the power of the court is that of counsel, as an officer of the court. International Shipping Co., S.A. v. Hydra Offshore, Inc., 875 F.2d 388, 393 (2d Cir.) , *cert. denied,* 493 U.S. 1003, 107 L. Ed. 2d 558, 110 S. Ct. 563 (1989). Since the Firm made no effort to conduct a reasonable inquiry, it has violated Fed. R. Bankr. Proc. 9011 and Local Rule 9011-1.

39. The court may also find that the Firm violated Judicial Law 287(1). That section provides that an attorney who is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party is guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action. By knowingly participating in the pursuit of a motion that is based upon false statements of fact, and that was brought for an improper purpose, Mr. Joyce and Ms. Stead have consented to the deceit perpetrated by the Debtor of the Court.

**THE VACATE MOTION IS TIME-BARRED AND DESIGNED TO HARASS COUNSEL AND CO-COUNSEL**

40. The Vacate Motion is time-barred and wholly frivolous, designed to harass Counsel, and was filed for an improper purpose.

41. 11 U.S.C. § 1330 permits the revocation of a confirmation order within 180 days of entry of the order if the order was procured by fraud. That 180 day period has expired. Should the Firm seek to rely on this section to revoke the confirmation order, its request would be time-barred. The Firm's failure to file the Vacate Motion prior to the expiration of this period further demonstrates Counsel's contention that, despite the fact that the Firm has known of this alleged issue since November 2014, it failed to conduct a timely and

13

proper inquiry of the facts underlying the Debtor's case before proceeding before the court.

42. 11 U.S.C. § 1307 permits a debtor to convert or dismiss a case, whichever is in the best interests of the estate, for cause including revocation of a confirmation order under Section 1330. The courts have found that Section 1307 may not be utilized to circumvent the 180 day requirement contained in Section 1330.

43. Finally, the request to set aside the confirmation order is time-barred under Fed. R. Civ. Proc. 9024. The Confirmation Order is a final judgment on the merits and binds the debtor and creditors under Section 1327. E.g., Celli v. First Nat'l. Bank, 460 F. 3d 289, 293 (2d Cir. 2006). As such, a confirmation order is deemed to be a final judgment on the merits and bars any challenges to the terms of a plan that could have been brought previously.

I declare under the penalty of perjury that the foregoing is accurate and true.

April 2, 2015  
Astoria, New York

/s/Norma Ortiz  
Norma E. Ortiz  
Ortiz & Ortiz LLP  
32-72 Steinway Street, Ste. 402  
Astoria, NY 11103  
Tel. (718) 522-1117  
*Pro Se*