Teitelbaum & Baskin, LLC
Attorneys for Wells Fargo Bank, N.A.
d/b/a America's Servicing Co., Servicer
1 Barker Avenue, Third Floor
White Plains, New York 10610
Tel. 914.437.7670
Fax. 914.437.7670
E. Mail jteitelbaum@tblawllp.com
Jay Teitelbaum, Esq.

Hearing Date: May 7, 2015
Time: 2:00 p.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------
In re:                                          :     Chapter 13
                                                :     Case No: 10-12490
America Sanchez,                                :
        Debtor                                  :
                                                :
-------------------------------------------------------

## OBJECTION OF WELLS FARGO, N.A. D/B/A AMERICA'S SERVICING CO., TO DEBTOR'S MOTION TO SET ASIDE THE STIPULATION OF SETTLEMENT DATED APRIL 30, 2014 AND APPLICATION FOR SANCTIONS PURSUANT TO 28 U.S.C.§1927

Wells Fargo, N.A. ("**Wells Fargo**") d/b/a America's Servicing Co. ("**ASC**"), through its counsel Teitelbaum & Baskin, LLC, as and for its (A) Objection to the Debtor's Motion to (1) Set Aside the Stipulation of Settlement dated April 30, 2014; (2) Reopen the Chapter 13 Plan; (3) Issue an Order Dismissing the Chapter 13 Case; and (4) Granting Other and Further Relief, dated March 13, 2015 (the "**Motion**"), and (B) Application for the Imposition of Sanctions Against the Law Office of Dwight D. Joyce Pursuant to 28 U.S.C. §1927, hereby states as follows:

### PRELIMINARY STATEMENT

1. The Debtor, through newly retained counsel, seeks to set aside a settlement (the "**Settlement**") evidenced by a certain "So-Ordered" Stipulation of Settlement entered on the Court's docket as ECF Docket No. 137 and 138. (the "**Stipulation of Settlement**", a

1

copy of which is attached as Exhibit A to the accompanying supporting affirmation of Jay Teitelbaum dated April 17, 2015, the "**Teitelbaum Aff**.)

2. The Settlement was negotiated by the parties through their counsel to settle a litigated contested matter. The Settlement was approved in open court by the Honorable Sean Lane after due consideration of the terms as detailed on the record of the proceedings.

3. The Motion fails to specify the procedural basis for the relief sought, but any such motion to set aside such an order or judgment must be made pursuant to Fed. R. Civ.P. 60(b), as made applicable herein by Bankruptcy Rule 9024. *In re Madoff*, 489 Fed. Appx 519, 2012 WL 6634006 (2d Cir. 2012); *In re Tolkin*, 2012 WL 1132475, at **5-6 (E.D.N.Y. 2012)

4. Where, as here, the order or judgment is the product of a negotiated and agreed upon disposition of a litigated matter, the moving party must overcome a heavier than normal burden by demonstrating that the binding contract executed by the parties and approved by the court was the product of fraud or mutual mistake. *In re Tolkin*, 2012 WL 1132475 at **5-6. An incorrect assessment by the consequences of the settlement is not a basis to void a settlement approved in open court. *In re Carlton Concrete Corp.*, 2008 WL 4443233, at *6 (E.D.N.Y. Bankr. Sept. 26, 2008).

5. Thus, even assuming *arguendo* that the allegations in the Motion can be believed, to wit that prior counsel did not explain the Settlement to the Debtor and/or the Debtor did not understand the consequences of the Settlement, as a matter of law, such allegations are insufficient to support the relief requested.

6. Moreover, the evidence demonstrates that such allegations and the Motion are baseless and frivolous and a vexatious waste of judicial resources. The indisputable evidence which was available to counsel who filed the Motion is that:

- In lieu of proceeding to trial, the parties reached a negotiated settlement which was approved by the Court on December 10, 2013 after the terms were fully set forth on the record of the proceedings (a copy of the Transcript of such proceedings is attached as Exhibit B to the Teitelbaum Aff.).

- Counsel for the parties drafted the Stipulation of Settlement, which was executed by the Debtor on February 14, 2014 (a copy of the executed Stipulation of Settlement and consent judgment is attached to the Teitelbaum Aff. as Exhibit C)

- On May 2, 2014, the Stipulation of Settlement was presented to and approved by the Bankruptcy Court.

- The Debtor has performed the terms of the Settlement by among other things, turning over the rent generated from the Premises and vacating the Premises (a copy of relevant emails from Debtor's counsel confirming performance is attached to the Teitelbaum Aff. as Exhibit F).

- The Debtor has received the benefits of the Settlement, among other things, living rent free at the property for over six months and receiving a general release.

- Wells Fargo has relied upon the Settlement, releasing claims against the Debtor, paying taxes, insurance and settlement fees

3

7. There is no legal or factual basis for the Motion and vacating the Settlement will prejudice Wells Fargo and ASC.

8. In addition to denial of the Motion, Wells Fargo seeks the imposition of sanctions against the Law Offices of Dwight D. Joyce, as counsel for the Debtor, pursuant to 28 U.S.C. §1927 for its reasonable costs and expenses incurred in connection with responding to this frivolous and wasteful proceeding.

## STATEMENT OF FACTS

9. A full recitation of the facts of the underlying loan and dispute are set forth in the Stipulation of Settlement.

10. On March 6, 2006, America Sanchez ("**Sanchez**" or the "**Debtor**") executed a promissory note payable to the order of First Meridian Mortgage, a limited liability company, ("**First Meridian**") in the principal amount of $473,600 (the "**Note**"). Sanchez received the proceeds of the Note to purchase the premises identified as 1130 Elder Avenue, Bronx, New York, 10472 (the "**Premises**").

11. To secure the obligations under and in connection with the Note, Sanchez granted to Mortgage Electronic Registration Systems, Inc., as nominee for First Meridian and its successors and assigns, a mortgage and lien upon the Premises pursuant to a mortgage dated March 6, 2006 (the "**Mortgage**").

12. The Mortgage was recorded in the office of the City Register of the City of New York on March 16, 2006 at CRFN 2006000150367.

13. The original Note and Mortgage are held and owned by U.S. Bank, National Association, as trustee (the "**Trustee**"), in connection with that certain Pooling and Servicing Agreement, dated May 1, 2006 between and among Credit Suisse First Boston Mortgage

Securities Corp., as Depositor, DLJ Mortgage Capital, Inc., Seller, Wells Fargo Bank, N.A., Servicer, Master Servicer and Trust Administrator, Select Portfolio Servicing, Inc., Servicer and Special Servicer and U.S. Bank, National Association, Trustee, relating to CSAB Mortgage Backed Pass Through Certificates, Series 2006-1 (the "**Trust**").

14. Wells Fargo Bank, N.A. d/b/a America' Servicing Company is the servicer of the Note and Mortgage designated by the Trustee pursuant to the Trust.

15. On or around June 29, 2009, the Trustee for the Trust, commenced a foreclosure action in the New York State Supreme Court, County of Bronx, captioned *U.S. Bank, National Association, as Trustee for CSAB Mortgage Backed Pass Through Certificates, Series 2006-1 v. America Sanchez, et. al.* (Index No. 381346/2009) (the "**Foreclosure Action**") against Sanchez to enforce the Trust's rights under the Note and Mortgage with regard to the Premises.

16. On May 7, 2010, the Debtor commenced the above captioned bankruptcy case (the "**Bankruptcy Case**").

17. On June 19, 2010, ASC filed a proof of claim in this case designated as Claim No. 3-1 asserting a secured claim pursuant to the Note and Mortgage in the amount of at least $552,502.83, plus interest, costs, fees and expenses which continue to accrue (as amended on July 26, 2013, the "**Claim**").

18. Between July 2010 and February 2012, the Debtor and ASC on behalf of the Trust, engaged in loss mitigation supervised by this Court.

19. In February 2012, loss mitigation was terminated without an agreement having been reached to modify the terms of the Note and Mortgage.

20. On September 26, 2012, the Debtor filed an objection to the Claim (ECF No. 79), asserting that ASC and the Trust lacked standing to enforce the Note and Mortgage (the "**Claim Objection**").

21. On or about March 18, 2013, ASC filed a response to the Claim Objection (ECF No. 95).

22. An evidentiary hearing on the Claim Objection was scheduled before the Honorable Judge Lane on December 10, 2013 (the "**Trial**").

23. Prior to the scheduled Trial, documents were produced and the parties engaged in pre-trial motion practice.

24. On December 10, 2013, the parties appeared before Judge Lane for the Trial. Present at the Trial were:

    a. Linda Tirelli, Esq., special counsel for Debtor;

    b. Norma Ortiz, Esq., counsel for Debtor;

    c. Debtor, America Sanchez;[1]

    d. Jay Teitelbaum, Esq., counsel for Wells Fargo;

    e. Brock Wiggins, employee at Wells Fargo, witness for Wells Fargo;

    f. Kelly Crunican, employee at U.S. Bank, witness for Wells Fargo; and

    g. Court personnel, including court reporter.

Teitelbaum Aff.

25. The parties arrived at the Trial at approximately 9:00 a.m. on December 10, 2013. Instead of proceeding directly with the Trial, the parties advised the Court that there had been progress toward a settlement and sought permission to continue such discussions. *Id.*

---

[1] Upon information and belief, a Spanish/English speaking interpreter from Ms. Oritz office was present to assist Ms. Sanchez.

26. At approximately 11:00 a.m., counsel for the parties advised Judge Lane that a settlement had been reached. *Id.*

27. At approximately, 11:30 a.m. Mr. Teitelbaum placed the agreed terms of the Settlement on the record for the Court's consideration. (See Transcript at pp. 10-15). In general, the terms were as follows:

   a. The terms were subject to final documentation executed by the parties and approved by the Court.

   b. The Settlement permitted a use an occupancy period of six months which allowed the Debtor to remain in the premises, rent free until June 30, 2014;

   c. The Debtor would be responsible for paying the utilities in the building, but not the taxes and insurance, through June 30, 2014;

   d. As the building was a four family dwelling with the Debtor occupying only one unit, commencing December 2013 through the Occupancy Period, the Debtor would account for and pay building expenses from gross rent and turn over to Wells Fargo/ASC the net rental income received from the three rental units;

   e. At the end of the Occupancy Period, the Premises would be turned over to Wells Fargo or its designee via foreclosure, a deed in lieu of foreclosure or a consent judgment of foreclosure;

   f. The automatic stay was vacated to permit the parties to implement the Settlement;

   g. Wells Fargo withdrew its proof of claim and waived any deficiency claim under the Note and Mortgage;

   h. All objections to the exercise of *in rem* rights against the Premises were withdrawn;

 i. The Debtor would cooperate in the turnover process, including notifying Wells Fargo as apartments became vacant and agreeing not to re-let the apartments without consent;

 j. The Debtor would not encumber, transfer, or convey the property;

 k. A payment of twenty-thousand dollars ($20,000.00) to Debtor's counsel would be made by the lender; and

 l. Exchange of mutual releases.

28. In addition to the waiver of an deficiency claims arising from the Debtors default in 2009, Wells Fargo released any claim that the Debtor turn over post petition rents collected from the inception of the bankruptcy case some 43 earlier.

29. After the presentation Judge Lane confirmed that the parties were in agreement with the terms described, approved the settlement on the record, and confirmed that the final agreement could be approved on notice of presentment. Judge Lane specifically stated:

> "I am very comfortable with the outlines of the settlement.
> And I assume that all parties are here today, yes?"
> (Transcript page 17, lines 20-22).

30. In response Ms. Ortiz, counsel for Ms. Sanchez, specifically confirmed,

> "Yes, Your Honor. Yes. We have the Debtor's consent."
> (Transcript page 17, lines 23-24)

31. Finally, Judge Lane thanked Counsel and the parties present (including the Debtor and representatives from Wells Fargo) for their efforts to reach a settlement. (Transcript page 19, lines 2-13)

32. By email dated January 16, 2014, counsel for the Debtor confirmed that she was reviewing with Ms. Sanchez the Stipulation of Settlement. (Teitelbaum Aff. Exh. D).

33. By email dated January 30, 2014, Counsel for the Debtor confirmed that the Debtor had reviewed the Stipulation of Settlement, which had been translated to Spanish for her, and that the Debtor had requested two modifications to the Stipulation of Settlement. First, the Debtor requested a modification to permit the Debtor to seek a loan modification. Second, the Debtor wanted to confirm her ability to vacate the premises prior to June 30, 2014. (Teitelbaum Aff. Exh. E).

34. By email dated January 30, 2014, I confirmed that (i) a loan modification would not be considered (ii) allowing the Debtor to vacate the Premises prior to June 30, 2014 would be accommodated. (Teitelbaum Aff., Exh. E).

35. By email dated January 30, 2014, Ms. Ortiz responded that her client was "ok with it," *Id.*.

36. Thereafter, the Stipulation of Settlement and accompanying Consent Judgment were executed by Ms. Sanchez before a notary on February 14, 2014 and delivered to counsel for Wells Fargo. (Teitelbaum Aff.)

37. The Stipulation of Settlement and Consent Judgment of Foreclosure with the Debtor's original signatures are in the possession of Teitelbaum & Baskin, LLC.

38. The Stipulation of Settlement was so-ordered by the Court on May 2, 2014 (ECF Docket No. 137).

39. An Order Approving Stipulation of Settlement was entered on May 2, 2014 (ECF Docket No. 138).

40. The Stipulation of Settlement implemented the Settlement as described to the Court on December 10, 2013, including:

   a. Sanchez was permitted to occupy the Premises rent free until June 30, 2014 (the "Occupancy Period") at which time she agreed to vacate the Premises and deliver peaceful possession of the Premises. (Stipulation of Settlement at ¶¶4 and 5)

   b. The peaceful turnover of possession and title to the Premises as of June 30, 2014. (*Id.*, ¶3(b));

   c. Sanchez was obligated pay utilities from gross rent collected from the three non-owner occupied apartments, account to ASC for such rent collections and expenses, and remit the net rental income to ASC. (*Id at* ¶4(d);

   d. ASC agreed to pay property taxes and insurance. (*Id.* at ¶8);

   e. Assignment of all leases and rents to ASC. (*Id.* at ¶6);

   f. Waiver of any recourse or deficiency claim against Debtor. (*Id.* at ¶3(c));

   g. Continued prosecution of the pending foreclosure action with respect to the Premises during the Occupancy Period" (*Id.* at ¶3(d));

   h. Modification of the automatic stay to permit the parties to implement the Settlement. (*Id.* at ¶9)

   i. Debtor's counsel fees in the amount of $20,000 would be paid by ASC. (*Id.* at ¶12).

   j. Exchange of Mutual Releases. (*Id.* at ¶¶16-17).

   k. Settlement and discontinuance of all contested matters and objections between Wells Fargo, ASC and the Debtor. (*Id.* at ¶11).

10

41. Upon information and belief, the parties have fully performed their obligations under the Stipulation of Settlement. Ms. Sanchez (i) executed the Stipulation of Settlement and the Consent Judgment; (ii) delivered the required accounting for income and expenses and the net rental income; and (iii) vacated the Premises on or before June 30, 2014 as evidenced by the following correspondence:

- On February 19, 2014, counsel delivered a summary of the income and expenses and net rental income for the January and February 2014. (Teitelbaum Aff Exhibit G).

- On March 26, 2014, counsel delivered a summary of the income and expenses and net rental income for December 2013 and March 2014 and the original signature pages for the Stipulation of Settlement. (Teitelbaum Aff. Exhibit H).

- On April 22, 2014, counsel delivered a summary of the income and expenses and net rental income for April 2014 (Teitelbaum Aff. Exhibit I).

- Building expense information and rental income for May and June were delivered in June 2014 (Teitelbaum Aff. Exhibit J).

- By email dated July 2, 2014, counsel for Ms. Sanchez confirmed that Ms. Sanchez and her family vacated the Premises and returned the keys to ASC. (Teitelbaum Aff. Exh. F).

- 

42. Wells Fargo/ASC relied upon the Settlement, among other things, granting release of deficiency judgment, paying taxes, insurance and attorney fees (Teitelbaum Aff. Exh. A and C).

11

43. The Foreclosure Action is proceeding against Sanchez and a motion for an order of reference is returnable for the New York Supreme Court, Bronx County on May 29, 2015.

44. The foregoing facts are either a matter of public record or were readily available to the Law Offices of Dwight D. Joyce prior to the filing of the Motion. Upon information and belief, counsel willfully chose to ignore the obligation to investigate the facts of this matter before filing the Motion for no reason other than to delay and interfere with the rights of Wells Fargo and ASC under the Stipulation of Settlement and applicable law.

## ARGUMENT

45. All parties were represented by counsel at all phases of the litigation leading to the Settlement and in connection with the negotiation, drafting and implementation of the Settlement.

46. The Settlement has been fully implemented. Ms. Sanchez and her family received the benefits bargained for- -to wit- -continued rent free occupancy of the Premises for six months in order to allow time for Ms. Sanchez to relocate and for her children to finish the school year. Ms. Sanchez was relieved of her obligations under the Mortgage and Note, including her obligation to turn over post –petition rents collected, and of her obligation to pay her counsel fees.

47. Judge Lane was fully familiar with the legal and factual issues which were to be tried on December 10, 2013 and was fully apprised of the terms of the Settlement before finding that that the Settlement was fair and reasonable.

48. Ms. Sanchez had over two months from the hearing to consider and review the Settlement. Ms. Sanchez knew and understood that at the end of Occupancy Period the Premises would be turned over to Wells Fargo.

49. Approval or denial of a settlement rests within the sound discretion of the bankruptcy court. The decision of the Bankruptcy Court will not be disturbed absent an abuse of such discretion. *Suncal Communities I LLC v. Lehman Commercial Paper, Inc.*, 2010 WL 4942208 (2d Cir 2010); *In re AMR Corp.*, 502 B.R. 23, 43 (Bankr. S.D.N.Y. 2013).

50. It is axiomatic that "[s]ettlements or compromises are favored in bankruptcy and, in fact, encouraged ... 'In administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts.' "*In re Adelphia Communs. Corp.* 368 B.R. 140, 226 (Bankr.S.D.N.Y.2007) (quoting *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968)).

51. In general, motions from relief from an order or judgment under Rule 60 are not favored; and thus require a showing of exceptional circumstances. *In re Madoff*, 489 Fed. Appx 519, 2012 WL 6634006 (2d Cir 2012).

52. In cases where the order is a court approved settlement of a litigated dispute, the burden is even greater requiring a showing of fraud or mutual mistake." *See In re Bradlees Stores*, 291 B.R. 307, 311 (S.D.N.Y. Bankr. 2003) (*citing In re Huff*, 118 B.R. 146, 148 (Bankr. S.D. Fla. 1990) (Because "the prompt settlement of claims and disputes make the compromise of claims of particular importance in a bankruptcy reorganization, settlement of bankruptcy claims should be liberally construed and a stricter standard is applied"); *In*

13

*re Janet L.*, 287 A.D.2d 865, 731 N.Y.S.2d 299, 301 (3d Dept. 2001) ("The standard is appropriately onerous because stipulations of settlement, particularly those entered into in open court, are favored by the courts and not lightly cast aside"); *In re North Broadway Funding Corp.*, 34 B.R. 620, 622 (E.D.N.Y. Bankr. 1983).

53. In *In re Tolkin*, the court stated:

> "A settlement agreement is a contract that is interpreted according to general principles of contract law." *Powell v. Omnicom, BBDO/PHD*, 497 F.3d 124, 128 (2d Cir.2007). "Once entered into, the contract is binding and conclusive." *Id.* "When a party makes a deliberate, strategic choice to settle, a count cannot relieve him of that [ ] choice simply because his assessment of the consequences was incorrect." *Id.* "A failure to properly estimate the loss or gain from entering a settlement agreement is not an extraordinary circumstance that justifies relief under Rule 60(b)(6)." *Bank of New York*, 14 F.3d at 760. "The broad power granted by Rule 60(b)(6) is not for the purpose of relieving a party from free, calculated and deliberate choices he has made." *AL & LP Realty Co.*, 164 B.R. 231, 234 (Bankr.S.D.N.Y.1994) (quotations, alterations and citation omitted). "Holding the Debtor to the deal it struck is neither extraordinary nor an 'extreme' or 'undue' hardship." *In re AMC Realty Corp.*, 270 B.R. 132, 144 (Bankr.S.D.N.Y.2001).

2012 WL 1132475 at *9.

54. Further, in *In re Carlton Concrete Corp.*, the Court refused to modify a settlement where counsel admitted that he had not carefully read or understood the terms of the settlement. The court found:

> It is well settled in the Second Circuit that "an attorney's failure to evaluate carefully the legal consequences of a chosen course of action provides no basis for relief from a judgment." *Nemaizer*, 793 F.2d at 62 (holding that counsel's error in not contemplating the breadth of a stipulation dismissing a claim does not constitute mistake, inadvertence, surprise or excusable neglect for purposes of Rule 60(b)); *see also O'Connor v. Pan Am Corp.*, No. 98 Civ. 7838, 2000 WL 254010, at *3 (S.D.N.Y. Mar 7, 2000), *aff'd* 2001 WL 246056 (2d Cir. Mar. 12, 2001) (denying motion for reconsideration where appellant was well aware of a

14

> prior settlement waiving all claims against defendant in order to resolve administrative claim). Moreover, carelessness or ignorance of a litigant or its counsel does not provide grounds for relief under Federal Rule 60(b)(1). *See, e.g., Progressive Casualty Ins. Co. v. Liberty Mutual*, No. 91 Civ. 2477(SWK)(LB), 1996 U.S. Dist. LEXIS 13437, at *6 (S.D.N.Y. Sept. 13, 1996) (denying relief under Rule 60(b)(1) where the mistake was the result of counsel's own neglect); *Congress Fin. Corp. v. John Morrell & Co.*, No. 90 Civ. 7191(RPP), 1992 U.S. Dist. LEXIS 8302, at *8 n. 3 (S.D.N.Y. June 3, 1992) ("[A] conscious decision made by counsel which has proved incorrect or unfortunate for a party is not the sort of excusable neglect contemplated by Rule 60(b).") (citing *United States v. Erdoss*, 440 F.2d 1221 (2d Cir.1971), *cert. denied* 404 U.S. 849 (1971)).

2008 WL 4443233, at *6

55. In this case, Ms. Sanchez was represented by two skilled bankruptcy attorneys who carefully negotiated the Settlement. There is no basis to believe that Counsel did not understand or explain the Settlement to Ms. Sanchez. In fact, as set forth in the declaration of Norma Ortiz, dated April 2, 2015 (ECF No. 147), the evidence is to the contrary. Ms. Sanchez was, upon information and belief, fully advised of the terms of the Settlement and her legal options in her native language.

56. There is not a single allegation in the motion that Judge Lane abused his discretion. The record reflects that Judge Lane (i) fully understood the matters being settled and the terms of the Settlement; (ii) confirmed that the terms of the Settlement were acceptable to the parties; and (iii) duly exercised his discretion in approving the Settlement.

57. There is not a single allegation that the terms of the Settlement were unclear or obtained by fraud or mutual mistake, or that Ms. Sanchez's counsel did fully understand the terms of the Settlement. Indeed, the record is to the contrary.

58. The sole basis for the relief sought is the allegation by Ms. Sanchez that she did not understand the terms of the Settlement. As a matter of law, even assuming arguendo, that such an allegation could be believed, this is not a basis for relief under Rule 60(b).

59. However, the allegations cannot be believed and counsel for Ms. Sanchez knew or should have known that there was no basis for the allegations in the Motion. Ms. Sanchez was present in court the day the Settlement was reached and when it was presented to Judge Lane. Judge Lane received confirmation in open court that the Ms. Sanchez consented to the Settlement. (Transcript at p. 17, line 23). Ms. Sanchez continued to consult with her counsel for the two month period between when the Settlement was approved on December 10, 2013 and when it was executed on February 14, 2014. Ms. Sanchez sought to renegotiate terms of the Settlement which she now claims she did not understand. Ms. Sanchez performed the terms of the Settlement. Ms. Sanchez received the benefits of the Settlement, including rent free living for over 6 months, a general release and payment of her counsel fees. According to her affirmation, the Offices of Mr. Joyce failed to conduct any diligence to confirm the legal and factual allegations in the Motion.

60. The Settlement has been fully implemented and relied upon by the Parties.

61. There is no legal or factual basis to set aside this court approved contract which has been fully performed by the parties.

### Wells Faro and ASC Seek The Imposition of Sanctions Against the Law Offices of Dwight D. Joyce Pursuant to 28 U.S.C. §1927

62. This Court has the inherent power and authority to impose sanctions against counsel pursuant to 28 U.S.C. §1927. *In re Chakra*, 2013 WL 3286241 *8 (Bankr. S.D.N.Y.

2013); *In re East 80th Street Equities, Inc.*, 218 F.3d 109, 115 (2d Cir. 2000). The standard generally recognized to impose sanctions is that

> a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith—that is, 'motivated by improper purposes such as harassment or delay.' " <u>Eisemann v. Greene, 204 F.3d 393, 396 (2d Cir.2000)</u> (quoting <u>Schlaifer, 194 F.3d at 336</u>); *accord* <u>Pacific Elec. Wire & Cable Co., Ltd. v. Set Top Int'l Inc., No. 03 Civ. 9623(JFK), 2005 WL 2036033, at * 5 (S.D.N.Y. Aug. 23, 2005)</u>. . . .

*In re Chakra,* 2013 WL 3286241 *8.

63. Unlike Rule 11, there is no predicate safe harbor requirement for the imposition of sanctions under 28 U.S.C. §1927. *In re Galgano III,* 358 B.R. 90, 103 (Bankr. S.D.N.Y. 2007).

64. A claim is without merit when it lacks any legal or factual basis. *Id.* (quoting *Schlaifer Nance & Co. v. Estate of Warhol,* 194 F.3d 323, 334 (2d Cir.1999). The Motion contains no case law or statutory references in support of the relief requested. Moreover, the factual allegations in the Motion are absolutely contradicted by the public record of the proceedings before this Court. Further, as set forth in the affirmation of Norma Ortiz, dated April 2, 2015 (the "**Ortiz Aff.**"), all substantive communications with the Debtor before, during and after the Settlement was reached were translated from English to Spanish for the Debtor.

65. Bad faith can be inferred when the actions taken are 'so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose. *In re Chakra,* 2013 WL 3286241 *10 (quoting *Schlaifer,* 194 F.3d at 338); *In re East 80th Street,* 218 F.3d at 116 (*citing United States v. International Bhd. Of Teamsters,* 948 F.2d 1338, 1345 (2d Cir. 1991).

66. In this case, bad faith must be inferred from the fact that the Motion was made without (i) any legal support; (ii) regard for any of the facts publicly available to counsel; and (iii) without first conferring with prior counsel as to the history of the case.

67. The Motion was made, without any legal or factual basis, after the Debtor received all of the benefits of the Settlement for the sole purpose of interfering with the rights of Wells Fargo and ASC under both the Stipulation of Settlement and applicable law.

68. Under these facts, the imposition of sanctions pursuant to 28 U.S.C. §1927 is appropriate.

69. As of the date hereof, Wells Fargo has incurred legal fees in the amount of $8,706.50 for 29.2 hours at an average billable rate of $298/hour, plus expenses and not including any court appearances in connection with this matter. (Teitelbaum Aff., Exhibit K)

WHEREFORE, ASC and Wells Fargo respectfully request that the Court deny the Motion in its entirety, award Wells Fargo legal fees and expenses against the Law Office of Dwight D. Joyce pursuant to 28 U.S.C. §1927 in the amount of not less than $8,735.31, plus additional fees for any time incurred after April 17, 2015, and grant such further relief which the Court may deem just and proper.

Dated: April 17, 2015

            **TEITELBAUM & BASKIN, LLC**
            Attorneys for Wells Fargo Bank, N.A., d/b/a
            America's Servicing Company, as Servicer

            By:   /s/ Jay Teitelbaum
                 Jay Teitelbaum, Esq. (JT-4619)
                 1 Barker Avenue
                 Third Floor
                 White Plains, New York 10601
                 (914) 437-7670
                 jteitelbaum@tblawllp.com